**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD, WEST VIRGINIA**

**DAVID BALL**

    **Plaintiff,**

**v.**                                           **Civil Action No.** 1:24-cv-00249

**BASIM ANTOUN, M.D.**

    **Defendant.**

## Preface to Complaint

This litigation involves a medical malpractice action surrounding the reckless misread of an abdominal CT scan by Basim Antoun, M.D. on June 7, 2022 while Dr. Antoun was working at the Princeton Community Hospital, Bluefield, West Virgina facility. In *Pledger v. Lynch*, 5 F.4th 511 (4th Circuit 2021) the Fourth Circuit Court of Appeals held that West Virginia's Pre-Suit Notice and Certification Requirements under West Virginia Code §55-7B-6 (2003) were inapplicable in a medical malpractice action brought in Federal Court. The Fourth Circuit specifically held that "in sum we hold that the MPLA's pre-dispute certification requirement, W.Va. Code §55-7B-6, is displaced by the Federal Rules under *Shady Grove*, and therefore does not apply to *Pledger's* Federal – Court FTCA Claim". Subsequent to the Pledger decision, multiple United States District Courts throughout the State of West Virginia have found that the MPLA's pre-suit – certification process is inapplicable to medical malpractice actions brought in Federal Court both in claims involving the FTCA and in diversity medical malpractice cases like this case.

*Jane Doe #4 v. Raleigh General Hospital, LLC*, 5:20-cv-00865 (S.D.W.Va. September 30, 2021) (The Fourth Circuit Court of Appeals), discussion in *Pledger* "...appears to have now squarely held that state – law certification requirements like West Virginia's are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in Federal Court. *Pledger* thus stands for the proposition that "the Federal Rules, not the MPLA, governed (medical malpractice) claims in Federal Court". *Hancock v. United States*, Civil Action No. 1:20-00483 (S.D.W.Va. January 7, 2022) ("In view of *Pledger*, the undersigned finds that Plaintiff's failure to comply with the West Virginia MPLA's pre-suit requirements do not warrant dismissal of the above action". *Jones v. United States*, 1:15-CV-50 (N.D.W.Va. March 24, 2022) (After assessing the *Pledger* decision, the Court held that "Accordingly, state – law certification requirements like West Virginia's are inconsistent with the Federal Rules of Civil Procedure and thus displaced by those rules in Federal Court") *Johnson v. W.Va. Univ. Bb of Governor's* 2:21-cv-00380 (S.D.W.Va. March 28, 2022) ("Defendants each contend that the *Pledger* decision is inapplicable to the instant case because it involved an FTCA claim, which established the Federal Court's Federal jurisdiction, and the Court has no subject matter jurisdiction over Plaintiff's state – law MPLA claims due to its failure to comply with it pre-suit notice requirements. This reading of the *Pledger* decision is completely misguided, though, in it ignores the underlying *Shady Grove* analysis supporting the Fourth Circuit's conclusion that the Federal Rules of Civil Procedure supplanted the MPLA's pre-suit requirements in Federal Court. The applicability of the *Shady Grove* analysis is not limited to cases involving federal question jurisdiction, which was the case in *Pledger* – rather, cases involving diversity jurisdiction and supplemental jurisdiction are also within *Shady Grove's* purview). *Neidig v. Valley Health System*, 3:22-cv-161 (N.D.W.Va. October 31, 2022) ("The Fourth Circuit's holding in *Pedger v. Lynch*, 5 F.4th 511 (4th Cir. 2021) was clear: "certificate requirements like West Virginia's do not govern actions in Federal Court because they conflict with and are thus supplanted by the Federal Rules of Civil Procedure". Accordingly, "Failure to comply with West Virginia's MPLA is not grounds for dismissal" in Federal Court.) *Norwood v. Jividen*, 2:20-cv-00299, 2022 WL 4461020 (S.D.W.Va. August 8, 2022) Report and recommendation adopted. 2:20-CV-00299, 2022 WL4453355 (S.D.W.Va. September 23, 2022) ("Although

noting that the context of *Pledger* was a medical malpractice claim brought against federal officials under the Federal Tort Claims Act, the undersigned believes that the rationale in *Pledger* extends to all medical malpractice claims brought in Federal Court").

Based upon the above rulings, Plaintiff asserts that he is not required to comply with West Virginia's pre-suit certification process before proceeding with the filing of this claim in the United States District Court for the Southern District of West Virginia. Even though Plaintiff believes the applicable law is clear that he is not required, prior to filing suit, to serve a Notice of Claim and Screening Certificate of Merit on the Defendant and permit a thirty (30) day time period for review prior to litigation being filed, Plaintiff intends, out of an abundance of caution should the *Pledger* decision be interpreted differently than the case decisions have interpreted it so far, to subsequently file a Notice of Claim and Screening Certificate on the Defendant. After the expiration of thirty (30) days, Plaintiff will file an identical lawsuit in Federal Court asking that it be consolidated with this case to assure compliance with West Virginia's MPLA if such is required.

## COMPLAINT

1. At all times relevant to the Complaint, David Ball was and continues to be a resident and citizen of the State of West Virginia.

2. At all times relevant to the Complaint, Basim Antoun, M.D., was a resident and citizen of the State of Virginia.

3. At all times relevant to the Complaint, a physician patient relationship existed between Basim Antoun, M.D. and David Ball. Basim Antoun, M.D. provided medical care on June 7, 2022 to the Plaintiff in the State of West Virginia.

4. Jurisdiction is appropriate under 28 U.S.C. §1332 based upon diversity of citizenship as the Plaintiff and Defendant are citizens of different states and the amount in controversy is greater than $75,000 exclusive of all costs and attorney fees.

## Complaint Allegations

5. David Ball presented to the Princeton Community Hospital, Bluefield, West Virginia facility, on June 7, 2022, with complaints of abdominal pain.

6. Based upon his signs and symptoms, the Emergency Room personnel treating David Ball ordered an abdominal CT scan which was read and reported on by Basim Antoun, M.D.

7. The report generated by Dr. Antoun did not report the presence of any free intraperitoneal air nor any extracolonic collection of air and feces which would have indicated a gastrointestinal perforation which is a life-threatening emergency medical condition.

8. In reality, multiple cuts of the CT scan did show the presence of free intraperitoneal air and extracolonic collections of air and feces that were never reported by Dr. Antoun.

9. Dr. Antoun violated the applicable standard of care by not only failing to report upon the presence of free intraperitoneal air and extracolonic collection of air and feces he likewise violated the standard of care by not reporting those critical findings immediately to the Plaintiff's caregivers.

10. As a result of Dr. Antoun's violations of the standard of care, Mr. Ball was released from the medical facility.

11. Hours later he returned to the same facility where fortunately Dr. Antoun was no longer acting as the radiologist. Instead, a second CT scan was performed nine (9) hours after Dr. Antoun's first CT scan and was read and reported on by Jennifer Kottra, M.D. who accurately described the abnormalities that Dr. Antoun should have reported earlier. Due to the delay in diagnosis Dr. Kottra reported that Plaintiff's critical conditions had progressed specifically reporting "Again demonstrated as free intraperitoneal gas, consistent with bowel perforation. There has been interval progression of significant abnormality since earlier the same day."

12. Dr. Kottra, in her report, describes in detail the abnormalities that were present on the first CT scan that was read by Dr. Antoun which were not reported on by him including the presence of intraperitoneal fluid and dispersion of the extracolonic feces and air through the abdomen.

13. Plaintiff was immediately transported to the Princeton Community Hospital's main facility in Princeton, West Virginia where he underwent emergency surgery resulting in a colostomy that is anticipated to be non-reversable.

14. If Basim Antoun, M.D. had not violated the standard of care in the issuance of his initial report, more likely than not David Ball would have only had to have a temporary reversable ileostomy or an end-to-end resection and anastomosis of his colon.

15. If Basim Antoun, M.D. had complied with the applicable standard of care, David Ball would have had a greater than 25% chance or opportunity of an improved outcome.

16. On June 8, 2022, approximately 24-hours after Antoun, M.D.'s violations of the standard of care occured during the initial reading of Plaintiff's CT scan, Dr. Antoun added an addendum to his report stating that the CT he had previously reported on did show "free intraperitoneal air". The addendum does not include the fact that the initial CT scan also showed that in the lower abdomen – pelvis there was an irregular extraluminal collection of air and feces. So, after reviewing the original CT a second time to provide an addendum, Dr. Antoun again missed the critical abnormality of the extraluminal collection of air and feces which was not included in his addendum again violating the standard of care again during his second read of the same CT scan.

17. Basim Antoun, M.D.'s failure to comply with the standard of care was not the simple misread of a single x-ray. CT scans, in reality, provide dozens and dozens of individual films in essence being much like multiple x-rays being taken. In this instance, Dr. Antoun did not just fail to report on the presence of free intraperitoneal air and the presence of an extracolonic collection air and feces found on a single cut of the CT. Instead, dozens and dozens of cuts of the CT scan showed these abnormalities. The abnormalities are found on approximately 80% of the cuts that were recorded on the CT scan.

18. Plaintiff has had the CT scan in question interpreted by an expert witness who believes that Basim Antoun, M.D.'s failures to see and report upon these abnormalities was "an egregious breach of the standard of care", going on to describe the perceptual failure by Dr. Antoun to be "one of the worst, most egregious and inexplicable misses" that he has seen in the forty-one (41) years he has been involved in the clinical practice of diagnostic radiology.

19. The failures in interpreting Plaintiff's CT scan by Dr. Antoun were grossly negligent and represent conduct that was carried out with actual malice or with a conscience, reckless, and outrageous indifference to the health, safety, and welfare of the Plaintiff permitting an award of punitive damages to be considered by the jury in this matter.

20. Basim Antoun, M.D. violated the standard of care, as is previously set forth in this Complaint, multiple times. The actions set forth above by Dr. Antoun individually and collectively proximately caused or contributed to cause or were a substantial factor in causing the injuries described herein to the Plaintiff.

21. Basim Antoun, M.D. failed to treat the Plaintiff in the same manner that a reasonably prudent radiologist would have under like or similar circumstances, which failure proximately caused or contributed to cause and/or were a substantial factor in causing injuries to the Plaintiff described in this Complaint.

22. If Basim Antoun, M.D. had complied with the applicable standard of care, the Plaintiff would have had a greater than 25% chance or opportunity of an improved outcome including avoiding the necessity of having a permanent colostomy.

23. West Virginia's Trauma Cap is unavailable to limit Basim Antoun, M.D.'s exposure in this case because the care provided by him to the Plaintiff was rendered "in a willful and wanton and reckless disregard of a risk of harm to the Plaintiff".

24. West Virginia's Trauma Cap is unavailable to limit Basim Antoun, M.D.'s exposure to in this case because the Office of Emergency Medical Services had not designated the facility where Plaintiff was being treated as a trauma center at the time of Dr. Antoun's interpretation of the CT scan which is the subject matter of this litigation.

25. The actions and allegations against Basim Antoun, M.D. in this Complaint constitute conduct that was carried out in a grossly negligent manner with actual malice or with a conscience, reckless, and outrageous indifference to the health, safety, and welfare of the Plaintiff permitting a punitive damage award.

26. The actions of Basim Antoun, M.D. were so egregious and reckless that they constitute conduct for which punitive damages may be awarded.

27. As direct and proximate result of the actions of Basim Antoun, M.D., the Plaintiff has and will experience past and future pain and suffering, past and future mental aguish, past and future annoyance, aggravation, and inconvenience, permanent deformity, past and future medical expenses, future life-care costs, and loss of enjoyment of life along with permanent disfigurement.

28. WHEREFORE, Plaintiff demands judgments against Basim Antoun, M.D. for all damages permitted under law including all economic and non-economic losses, all compensatory damages, punitive damages, and any other damages permitted under law in case such as the one being pursued.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

                                                **David Ball,**
                                                By Counsel.

_____
Arden J. Curry, II (W.Va. Bar No. 907)
Pauley Curry, PLLC
100 Kanawha Blvd., West
Charleston, WV 25302
(304) 342-6000 Phone
(304) 342-6007 Fax